**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**

**https://www.gaappeals.us/rules**

June 26, 2025

# In the Court of Appeals of Georgia

A25A0003. PEACHTREE RENAISSANCE PROPERTY, LLC v. CHOI.

DOYLE, Presiding Judge.

A sinkhole formed on property owned by Peachtree Renaissance Property, LLC ("Peachtree"). Peachtree brought an action against Anne Choi, the owner of adjacent property, asserting claims for negligence, trespass, and nuisance in connection with the sinkhole. Choi counterclaimed for negligence, trespass, nuisance, breach of declaration of covenants, and breach of easement. The trial court struck Peachtree's complaint as a discovery sanction, and the case proceeded to trial only on Choi's counterclaims, after which a jury found in favor of Choi, awarding her compensatory damages, attorney fees, and punitive damages. Alleging nine enumerations of error, including that the trial court abused its discretion by striking its complaint without a

hearing, Peachtree appeals. For the reasons that follow, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

The record shows that Choi owns property on Peachtree Industrial Boulevard that is bordered on two sides by property owned by Peachtree. One such side of Choi's property is bordered by Renaissance Boulevard, to which Choi has a nonexclusive roadway access easement. Choi's property is uphill from Renaissance Boulevard.

In 2020 or 2021, a sinkhole formed under Renaissance Boulevard next to a stormwater drop inlet. Peachtree's inspection of the sinkhole revealed that it had been caused by deterioration of an underground storm sewer pipe running from Choi's property to another pipe under Peachtree's property. Choi held no easement rights under Peachtree's property for purposes of operating a stormwater system. Peachtree was cited by the City of Doraville for the sinkhole being a code violation.

Peachtree notified Choi of the sinkhole, deteriorated pipe, and need to restore the area, advising her that water collected and concentrated by the water retention system on her property had been flowing through the pipe and that, because the pipe had deteriorated, the artificial flow of water from her property had caused the sinkhole. Peachtree also advised Choi that her use of Peachtree's property for storm

sewer purposes was unauthorized.

Thereafter, Peachtree attempted to negotiate a resolution of the issue with Choi, whereby Choi would contribute 25 percent of the cost of repairs, Peachtree would use Choi's recommended contractor to perform the work, and Peachtree would grant Choi a stormwater drainage easement under Peachtree's property. Choi, however, would not agree to these terms and refused to participate in the restoration of the area. At its own expense, Peachtree eventually repaired the sinkhole, sealed the deteriorated pipe, and replaced the curb inlet with a solid cement curb.

In June 2021, Peachtree filed a complaint against Choi for negligence, trespass, and nuisance, alleging that Choi's water system had collected and concentrated the flow of stormwater, causing erosion and, ultimately, a sinkhole to occur under Peachtree's property. Peachtree sought damages related to the sinkhole and injunctive relief preventing Choi from further collecting and concentrating stormwater on her property in a way that artificially increased the natural flow of water from Choi's property to Peachtree's property.

In August 2021, Choi filed an answer in which she denied liability for damages associated with the sinkhole because it had occurred on Peachtree's property. Choi also counterclaimed for negligence, trespass, nuisance, breach of covenants, and

breach of easement, asserting that Peachtree's restoration of the sinkhole area had caused stormwater to accumulate at the entrance of her property when it rained. Choi sought injunctive relief requiring Peachtree to unseal the pipe under Renaissance Boulevard and reinstall the curb inlet on Renaissance Boulevard. Choi also sought punitive damages and attorney fees under OCGA § 13-6-11, alleging that Peachtree's restoration of the sinkhole area had been undertaken intentionally and in bad faith for purposes of flooding her property.

On August 13, 2021, Choi served Peachtree with interrogatories and requests for production. Peachtree failed to timely respond to these discovery requests, and in October 2021, Choi sent Peachtree correspondence pursuant to Uniform Superior Court Rule 6.4 ("Rule 6.4") alerting it to the deficiency and requesting the outstanding responses. Peachtree's counsel responded to Choi's Rule 6.4 correspondence by stating that he had the certificate of service for the discovery requests but could not locate the requests themselves, which he asked Choi to resend. On October 28, 2021, Choi resent the discovery requests but advised that if she did not receive Peachtree's responses by November 1, 2021, she would file a motion to compel.

On December 15, 2021, Choi filed a motion for sanction of dismissal or, in the

alternative, to compel discovery responses, asserting that Peachtree's discovery responses were still outstanding. On January 24, 2022, the trial court entered an order compelling discovery, requiring Peachtree to serve responses to the outstanding discovery requests and file proof of such service by February 7, 2022. The order further provided that if Peachtree failed to comply, it would have until February 14, 2022, to show cause on the record why its complaint should not be stricken. No hearing was noticed or held prior to the entry of the order compelling discovery, and the order made no finding that Peachtree's failure to participate in discovery had been conscious or wilful.

Although Peachtree's discovery responses are not in the record, the parties do not dispute that Peachtree provided Choi with the outstanding discovery responses prior to February 7, 2022. It is also undisputed, however, that Peachtree failed to file proof of such service with the court as required by the order compelling discovery.

On February 18, 2022, the trial court entered an order striking Peachtree's complaint based on a finding that it had failed to comply with the court-ordered deadline and had not shown cause as to why its complaint should not be stricken. Again, no hearing was noticed or held prior to the entry of the order, and the order made no finding that Peachtree had consciously or wilfully failed to participate in

discovery.

After being restyled to reflect that Choi was the plaintiff and Peachtree was the defendant, the case proceeded to a jury trial based on Choi's counterclaims. At the close of evidence, the trial court granted Peachtree's motions for directed verdict on Choi's counterclaims for negligence and breach of declaration of covenants. The jury found in favor of Choi, awarding her $156,000 in compensatory damages for injury and repair to her property.[1] The jury further awarded Choi $88,000 in attorney fees and $30,000 in punitive damages, finding that Peachtree had acted with a specific intent to cause harm.

Following trial, Peachtree moved for j.n.o.v. and for a new trial. The trial court withheld entry of judgment and set a hearing on Choi's request for injunctive relief, at which hearing Choi dismissed her request for an injunction. Thereafter, the trial court entered judgment on the verdict and denied Peachtree's motions for j.n.o.v. and for a new trial. This appealed followed.

1. Peachtree contends that the trial court abused its discretion by striking its complaint as a discovery sanction without holding a hearing. We agree.

"[R]ulings on motions to strike . . . are reviewed by this Court using an abuse

---

[1] As to Choi's claims for trespass, nuisance, and breach of easement, the jury awarded her $0.

of discretion standard."[2] OCGA § 9-11-37 (d) (1) pertinently provides that

> [i]f a party . . . fails to serve answers or objections to interrogatories . . . after proper service of the interrogatories, the court in which the action is pending on motion may make such orders in regard to the failure as are just; and, among others, it may take any action authorized under subparagraphs (b) (2) (A) through (b) (2) (C) of this Code section.

OCGA § 9-11-37 (b) (2) (C) authorizes a trial court to dismiss an action as a sanction for a party's discovery violations.

Nevertheless, "a trial court's discretion as to sanctions is not unlimited, especially when the trial court is asked to impose the drastic sanctions of dismissal and default under OCGA § 9-11-37 (d)."[3] Our Supreme Court has "cautioned against the use of these harsher sanctions except in extreme cases . . . and ha[s] held that the trial court must find wilfulness as a predicate to imposing the sanctions."[4] Moreover, we have held that "[t]he imposition of sanctions under OCGA § 9-11-37 (d) without a

---

[2] (Punctuation omitted.) *Benton v. Tillery*, 374 Ga. App. 265 (912 SE2d 122) (2025), quoting *Cameron v. Miles*, 311 Ga. App. 753, 754 (1) (716 SE2d 831) (2011).

[3] (Punctuation omitted.) *North Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*, 330 Ga. App. 432, 435 (1) (767 SE2d 29) (2014).

[4] (Citation and punctuation omitted.) *McConnell v. Wright*, 281 Ga. 868, 869 (644 SE2d 111) (2007). See also *North Druid Dev.*, 330 Ga. App. at 435 (1) ("[B]efore a trial court may enter the sanction of dismissal it must find that the offending party has acted wilfully[.]").

7

motion, notice, and a hearing is reversible error."[5]

Given the above, Peachtree was entitled to a hearing on the issue of wilfulness prior to receiving the ultimate sanction of dismissal. And the trial court erred by failing to make findings that Peachtree had wilfully failed to comply with its discovery obligations in either its order compelling discovery or its order striking Peachtree's complaint, and by failing to notice or hold a hearing prior to the entry of either order.[6]

We recognize that, in some exceptional cases, a hearing is not strictly necessary in order for a trial court to find that a party's wilful failure to participate in discovery warrants dismissal of that party's pleadings.[7] This is not an exceptional case. Given

---

[5] (Punctuation omitted.) *ASAP Healthcare Network, Inc. v. Southwest Hosp. & Med. Center, Inc.*, 270 Ga. App. 76, 77 (1) (606 SE2d 98) (2004). See also *Taylor v. Marshall*, 321 Ga. App. 752, 754 (743 SE2d 444) (2013) ("[A]n order compelling discovery is not a condition precedent for the imposition of sanctions under subsection (d). All that is required is a motion, notice, and a hearing.") (citation and punctuation omitted); *North Druid Dev.*, 330 Ga. App. at 435 (1) ("[A] trial court is obligated to hold a hearing on a motion for discovery sanctions where it is contemplating the imposition of the ultimate sanction of dismissal or default judgment . . . for a party's wilful failure to comply with discovery requests.") (punctuation omitted).

[6] See, e.g., *North Druid Dev.*, 330 Ga. App. at 439 (1).

[7] For instance, in *McConnell*, the Supreme Court noted that "in a case where a trial court has already conducted a hearing on a prior motion to compel, the record may already contain enough evidence of the obstinate party's willful behavior to support the conclusion that any hearing on the issue of willfulness would simply be duplicative." 281 Ga. at 870, citing *Schrembs v. Atlanta Classic Cars, Inc.*, 261 Ga. 182,

8

that "no hearing of any type was held, and the record would support (though not demand) a finding that [Peachtree's] failure to [timely respond to discovery] resulted from negligence rather than willfulness[,] . . . a hearing on willfulness was required in this case."[8]

The necessity of a hearing is underscored by the fact that the parties do not dispute that Peachtree provided Choi with the outstanding discovery responses prior to the court-ordered deadline and failed only to satisfy the technical requirement of filing proof of such service.[9] Had a hearing been held, the trial court could have ascertained whether Peachtree had wilfully disregarded its discovery obligations or (as it now appears based on the record and representations of the parties before us) had substantially complied with them.[10]

Nevertheless, Choi argues that the fact that Peachtree's complaint was stricken had no impact on the prosecution of her counterclaim and thus provides no basis to

---

182-183 (402 SE2d 723) (1991).

[8] *McConnell*, 281 Ga. at 870.

[9] See *ASAP Healthcare*, 270 Ga. App at 79 (1) (A trial court "may not impose the sanction of dismissal without a hearing where as here, the plaintiff . . . responded to discovery, albeit in a . . . tardy manner.").

[10] That Peachtree's discovery responses are not contained in the record further highlights the importance of holding hearings at which the presence or absence of such evidence can be included in the record for the benefit of review.

overturn the jury's verdict. This argument fails.

Striking Peachtree's complaint fundamentally altered the framework of the subsequent proceedings. The style of the case was changed to reflect that Peachtree was the defendant and that Choi was the plaintiff, and the jury was disallowed from hearing that Peachtree initially sued Choi to prevent her from wrongfully collecting and concentrating stormwater and discharging it onto Peachtree's property without Peachtree's permission.

Not only did the striking of Peachtree's complaint prohibit it from pursuing its own claims for damages and declaratory relief; it also prejudiced Peachtree's ability to defend against Choi's counterclaims. For instance, the jury was not allowed to consider certain evidence related to Peachtree's restoration of the sinkhole. Specifically, the trial court forbade Peachtree from putting up evidence that Choi's own contractor estimated that the restoration would cost $16,000.[11] Under these circumstances, we cannot say that the trial court's striking of Peachtree's complaint had no impact on the verdict.

Accordingly, because the trial court held no hearing and made no finding on the

---

[11] Instead, the only damages evidence that the jury was allowed to hear consisted of testimony indicating that the cost to overhaul the entirety of Choi's stormwater drainage system would be $156,000.

issue of wilfulness before striking Peachtree's complaint as a discovery sanction, and because this error affected the subsequent proceedings and verdict, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

2. In light of our holding in Division 1, we need not address Peachtree's remaining enumerations of error regarding alleged errors made by the trial court after striking Peachtree's complaint.

*Judgment reversed and case remanded with direction. Markle and Padgett, JJ., concur.*